Good morning, Your Honors. May it please the Court, my name is David Eichner, and with James Harrison, we represent the appellant, Terrence Bressi. Again, I'd like to reserve five minutes of my time for rebuttal. This case is about a sobriety checkpoint in name only that is designed primarily for general law enforcement and not for public safety, such as running wants and warrants checks on drivers that pass through the roadblock, searching the vehicles for contraband, asking drivers, can I search your car, and not expecting a no answer. The appellant showed up at a roadblock on December 20, 2002, encountered this kind of activity, saw vehicles being searched, saw customs agents on the line, was confronted by a customs agent. Despite being told this was under tribal authority, he recognized that this was not purely a tribal roadblock. The appellant knew what the law was from Sitz and Edmond and said this is an unconstitutional roadblock under the Fourth Amendment. He was told, don't give me that Fourth Amendment, and he was treated with hostility from a couple of officers. One officer recognized he was not intoxicated, that he was very clearly sober based on his conversation, but they wanted his license so that they could check him out anyway. They were already checking him out by speaking with his employer, but they wanted to have compliance with the license check, a license check that was not, not only was it not required, but it was not permitted by constitutional authority. As a result, he was arrested unconstitutionally at this roadblock. Well, I suppose if the officers are strictly acting for the tribe, they're not subject to the Constitution. And, Your Honor, I would agree with that. However, the, while the officers said they were acting under tribal authority, this is really the crux of what our appeal is. Are they acting purely under tribal authority, as the district court found with the appellee's argument, or were they also acting under color of state law and or under color of federal law? If they're acting under color of state law simultaneously with tribal law, then a 1983 claim is permitted under Evans v. McCain. I wonder when they change hats. I guess, is that part of the? They're probably entitled to, to conduct a sobriety check on a road that runs through the reservation. And tribal law does permit sobriety checkpoints similarly to United States case law. In fact, the tribal case of A-Hill came out one year before Sitz, and the language very closely mirrors what Sitz says. For a public, it could be a public safety check for sobriety. We have, the tribe has an interest in safety on the road, but we want to minimize intrusion into the, the right to travel of people on the road, the right not to be seized. And they were concerned, in that opinion, of the vehicle searches that apparently were going on. In that opinion, they decided those vehicle searches were not suspicionless, but they expressed in the opinion that if they were suspicionless checks for vehicle searches for contraband, that that most certainly would not satisfy tribal law. So these particular checkpoints that were being conducted on December 20, 2002, don't even satisfy tribal law, much less United States federal law. So what do we, do we have anything about what was going on? We have the Schunk Memorandum that talks about the officer will make contact with the driver and look for obvious signs of any violation of tribal, state, or federal laws. But is there anything in the record about what the instructions were that night? I mean, this particular checkpoint? And the answer to that is no, Your Honor. And that's the problem with this case, is that there was incomplete disclosure from the appellees in this case. They initiated a criminal case against Mr. Bressey, and when Mr. Bressey's criminal defense lawyer submitted a subpoena, a lawful subpoena, to the tribal officers to produce those documents, they came into Justice Court and said, Sovereign Immunity, we're not going to provide them. That was on December 9, 2003. On December 5, 2003, the lawyer was told the documents did exist. Eight days after that case was dismissed, this action was filed. These appellees knew that those documents needed to be preserved. When discovery was conducted in 2005, suddenly the documents are lost. We were provided with one page of a two-page operational plan that had nothing more than the memo heading and didn't have the actual language of what was to be conducted at that time. We did receive some other of what was, Lieutenant Ford submitted an operational plan to officers that would participate, and in the second page of the memorandum apparently would say what was going to happen at that roadblock. Unfortunately, that page was never disclosed. The first page was disclosed. We did receive some other operational plans that mentioned inviting other jurisdictions to participate in the roadblock, and the paperwork that we have is largely inconclusive because discovery was not provided by the defendant's appellees in this case. So we'll – I'm sorry, Your Honor. Well, if the tribe has a right to put up a roadblock for sobriety purposes and your client is stopped, there's no problem. Is that correct? Well, Your Honor, hypothetically, and actually what happened in this case is the district court entertained hypotheticals rather than what actually happened in this case. But hypothetically, the tribe could enact a tribal roadblock purely under color of tribal law that does not invoke state or federal law. But of course, if it ran across violations of state or federal law, it could detain the violators until it turned them over to state or federal officers. They could do that, or because all of the officers of this tribal police, including all of the appellees, are certified by Arizona Peace Officer Standards and Training – the apprehended person over to themselves. I mean, there might be tribal officers doing the roadblock and then detaining somebody because there's a violation of state law and then they turn the violator over to themselves as state officers. But you're not contesting the arrest other than as a consequence of an illegal roadblock. Yes, Your Honor. That's correct. The arrest and the citation is essentially the fruit of the poisonous tree of an illegal stop. Without the illegal stop, nothing else could have followed in this case. There could have been no request for it. But the reality of the stop isn't because the tribe was conducting a sobriety checkpoint within the reservation, even though it's not a state highway. Your Honor, it isn't state or federal action purely because it's a state – it's a roadblock on the state right-of-way. It's a state action because the activity in this case is even more peculiar than the relationship of the tribal and state police in the Evans v. McKay case. So you include the inception of it and the planning of it and the scheme of it? Yes. Yes, Your Honor. I believe that the operational plans that we were disclosed and the organization and the way that when the appellees gave interviews to the criminal defense lawyer in this case, the stories were very different than what was pled in this case. The stories were, we're looking for violations of state law. We're looking to – looking for seatbelt violations, looking for insurance violations, checking to see if the state – in this case, it's not simply a tribal jurisdictional hat and a state jurisdictional hat. Well, if there had been no state officers at all involved in this, if they hadn't had this cross, you know, authorization, is it your position that the tribe wouldn't be able to look for violations of state and federal law? While I wouldn't say that they couldn't do it, I would say that it would diffuse any claim of state action. It's their ability to perform state investigatory acts and state arrests. They are state police officers. Just as an off-duty state police officer that does something, it could be considered under color of state law, depending on the facts of the case.  This is a very fact-intensive case. What I'm thinking of, of course, is the footnote in Strait, Strait against the A-1 contract. It's where the Supreme Court says, we do not here question the authority of tribal police to patrol roads within a reservation, including rights of way made part of a state highway, and to detain and turn over to state officers, nonmembers stopped on the highway for conduct violating state law. Yes, Your Honor. Well, that kind of suggests at least that the tribe, seeing a violation of state law, could stop the violator, detain the person until a sheriff comes and picks them up. Yes, Your Honor. And that is very distinguishable from what happened in this case, where a nonviolator was stopped without suspicion and, despite having no probable cause of any violations actually occurring, performed an arrest. There was no reasonable suspicion of anything. There was no reasonable suspicion, even at the time he was stopped. But suspicionless checkpoints, while permitted for public safety purposes, cannot be conducted for general law enforcement purposes by either the tribe or state or Federal officers. That's a crucial thing for you, then, is to show that this isn't for safety. It's for general law enforcement. Yes. And not only the presence, but the way the State and Federal, the Federal officers acted on the scene, created joint action under Brunette, the way they possessed their state authority, the way they used it simultaneously. They basically took blue and yellow paint, mixed it and made green. And now that this is in civil rights litigation, want to try to separate out the blue and yellow again. It's too late. We have green. They made their bed. They have to lay in it. They chose to bring charges against Mr. Bresci in state court. They chose to litigate this. And now they have to wear, they have to sleep in the bed that they made. I'm out of the time. I'm going into my rebuttal time now. But I just wanted to make another quick point regarding the malicious prosecution claim, that because there was no lawful stop in the first place, there was no lawful order that was given to Mr. Bresci, that any request that was made of him, any demand that was made of him was also unlawful. They knew that on December 20th, and they certainly knew that in June 20th, 2003, when they responded maliciously to a notice of claim by refiling charges and then not pursuing that claim in good faith in state court. And I reserve the balance of my time. Thank you. Good morning, Your Honors. My name is Roger Frazier for the individual police officers. And also here today is Mr. Farrell from the U.S. Attorney's Office, and I'm going to reserve at least two minutes so that he can respond to the malicious prosecution part of this. I think what this whole thing turns on is whether the two hats of the state empowerment to enforce state law and the actions taken under tribal authority exist simultaneously or only when the state law hat needs to be invoked. Because what the district court found and what we've argued is that the first four actions of the checkpoint, the stop, the questioning, and the detention of Mr. Bresci were all done under tribal authority. And if these officers did not have also state authority, they could still do all of those things, every single one of those things, until such time as they did determine that there was a violation of state law. If they did not have the AZ post authority at that moment, they could still detain Mr. Bresci and turn him over to state authorities. How about that Schunk Memorandum? The Schunk Memorandum was from the year 2000 and was for a single checkpoint that occurred in May of 2000, and that was before the Edmonds v. City of Indianapolis case. And I don't know if I'm saying that in the right order, but that's the case that held that you can't have a general crime detection type of check stop. That's a little troubling because it does create a question of fact on the 1983 claim as to what they were doing, and your client's failure to produce anything related to the operations plan might give rise to an inference that it was exactly what was done as recited in the Schunk Memo, and the reason that it wasn't produced is not because you lost it, but because that's exactly what it would show. Your Honor, the Schunk Memo was not reviewed by the officer who conducted the checkpoint that Mr. Bresci was stopped at. Lieutenant Schunk was not in charge of that. The officer, Officer Ford... Right, but it is an operational plan for a very similar checkpoint, so how do we know that it wasn't a similar or if not the same plan for this one? Officer Ford testified he had never even seen that memo before. He testified he wrote his own memo. That really answers the question. Well, he said that his memo did not include the checking for drugs and stolen vehicles and illegal aliens. The arrest reports indicate stops for illegal aliens and drugs, the sort of partial arrest reports that we saw. Correct, Your Honor, and they did find illegal aliens and they did find drugs, and those were turned over to Customs and the Board Patrol to handle. Did they search for them or it was just in plain view? There's no evidence that they undertook any unpermitted searches. There were some consensual searches, and in the series of questions in those various reports, the officers asked questions which eventually led to those things. But in all of those cases, this was a sobriety driver's license and registration checkpoint, and these people didn't have driver's licenses or didn't have their registrations, or the way that the information about the drugs or illegal aliens came up was never a direct question as somebody driving up to the checkpoint and the officer saying, do you have illegal aliens in the car, do you have drugs in the car? It seems like we're arguing the facts, and this is some judgment, right? We shouldn't be arguing the facts. They're not being disputed here. Actually, the part about the checkpoint is, first of all, that's under tribal authority, which is why the district court, I think, never got to that, because it was all done under tribal authority. So the only time those facts really come into question is whether they are invoking state authority for it or federal law for that. They were charged with two state violations under the Arizona Code. Well, that was after Mr. Bressee was stopped and refused to cooperate, refused to show his license, refused to identify himself. Whether Mr. Bressee was stupid or not isn't the question in refusing to cooperate and so forth. But he got, so what, we have four hours? The facts seem to be that we're covering a four-hour period of time during which he was handcuffed, and I can't remember at what point, but he's arguing the constitutionality of the roadblock. And he wasn't arrested for any of the things that the roadblock was set up for. He was arrested, well, he was, I take that back. He did not provide a driver's license or registration, would not identify himself other than his first name. And the officer said, as they told everybody, you have to give us your driver's license. Well, as long as he was sober, why was he detained? I mean, if the whole purpose was solely just this sobriety checkpoint purpose. No, it wasn't. It was not limited to that. It was three things, sobriety, registration and driver's license. SITS, you know the SITS case that allows sobriety checkpoints and refers to Delaware v. Prowse, which said that you can have checkpoints for registrations and driver's licenses. I've not seen any case. I didn't find one. I haven't seen one cited that said you can't have all three of those things at the same time. Does the tribal law require registration and driver's licenses? The tribal law requires both of those, and those are done through the state. In other words, tribal members have Arizona driver's licenses. They have Arizona license plates. Do they also have an I.D. that says I'm a member of the tribe? I believe they do. I believe I remember that being said, but I can't remember if that's in the record. But I believe that's correct. I can't remember ever having been stopped at a checkpoint like that. I think I would react like Mr. Bresse that I was being intruded upon in my rights for being violated, for being stopped with no suspicion at all. Well, then the question is, if you're thinking that and that's your subjective view. I am just questioning. I mean, I understand the Supreme Court said you could do that. I'm trying to think objectively if I've ever seen, other than at the border. And maybe that's analogous here. If this is under tribal law, then it's any violations or the rule that governs it is the Indian Civil Rights Act, which is like the Fourth Amendment. But the remedy is not a 1983 claim for that. It's habeas corpus, as was mentioned in the last argument. That is still all being conducted, though, a habeas claim in federal court. That's the remedy under the Indian Civil. That's the civil remedy under the Indian Civil Rights Act. The well, that's the key to this case. This is done under tribal authority. The federal officers that were on the scene were advised in advance that there was going to be this checkpoint. So if they show up voluntarily or remain after they've been there for a call, that does not change the decision to have the checkpoint, the planning of it, the governing of it, the supervision of it. That is all done by the tribal police without resorting to assistance. There's no conspiracy claim here. Mr. Bresci just claims he drove up. He saw Border Patrol. A customs officer came to his car and talked to him, which the record shows was completely voluntary. So the issue goes back to was this checkpoint done under tribal authority or under state authority? Even though the officers had the power to enforce state law, they did not use that. There's no evidence that they had any state insignia or invoked state law or anything when they were talking to Mr. Bresci until after they removed him, took his wallet out and then cited him under state law. And at that time, we did not. The defendants agreed that that would be state action, those last two events. And that's where you get into the qualified immunity part of the case. But like I said, the Schanck memo is two years earlier. It's before Edmonds. It was not used after Edmonds. The ---- Wasn't there testimony that the Schanck memo would still govern what goes on here? And it was clarified that in the same deposition that the Schanck memo, a lot of things are still used. Like you ask the same questions of everybody. You don't deviate from the questioning pattern. And so a lot of that is still the policy of the tribe. But the Schanck memo itself, the part that asked for drugs and things like that, that was not used. But the fact that that was not used by Lieutenant Ford in this case. How much do we know about the inception in the planning of this particular roadblock? In other words, you're saying it's being set up under tribal law as a tribal enterprise. I think your opponent was saying that they didn't really get the information to make clear what the planning of it was. I mean, I suppose the state officer, the tribal officers who also carry authority under the state could decide that it's a state roadblock as well as a tribal one. I don't know. Theoretically, they could. However, if they already have tribal authority to do that and for state action, that requires somehow using the state as your authority to do what you need to do because you don't have any other authority. Whether you really have the authority or not under state law, if you need to invoke it or act as though state law is what gives you the authority, then you're a state actor. But these officers had tribal authority. They did not need state authority. I think you're taking up all of the USA's time. No, we had agreed that he was going to take two minutes and I was almost there. You've got 30 minutes left. Well, if you're honest, are there any other questions I can answer before he takes over? Then I'll give him my extra 15 seconds. Good morning. My name is Tom Ferraro and I represent the United States. As to the United States, the only issue today is whether there is a genuine issue of material fact as to whether, regarding the plaintiff's claim of malicious prosecution. In the plaintiff's third committment complaint, they essentially admit that there was probable cause for the arrest of the plaintiff. And under Arizona law, the tort for malicious prosecution must be without probable cause. The plaintiff admits there was probable cause in his deposition and in a statement that's found at the excerpt of the clerk's record on page two of his affidavit. It's in the complaint. A second reason why the United States is not liable is because after the citations were filed and charged, the prosecutor, the state county prosecutor, undertook the prosecution. And under state versus the city of Phoenix, cited in our brief at page 14, when a prosecutor, excuse me, it's not page 14, it's page 16 in my brief, when a prosecutor undertakes a prosecution, a charge of malicious prosecution may not follow. This is a very simple issue. As to the United States, the district judge is finding that there was no genuine issue of material fact. In this case, it's absolutely correct. The charge or the tort of malicious prosecution will not lie here simply because it's undisputed that the plaintiff refused to produce his driver's license when asked. He's required to do so under state law. And that he refused to obey order. He refused to get out of the car, pull his car aside. There had already been a traffic accident occasioned by these by the checkpoint. So, Your Honors, unless you have any further questions, I'm prepared to stay. You say there was an accident? There had been an accident, according to the record, earlier, down away from the checkpoint. I'm not exactly sure of the distance. Because of the checkpoint? I don't know that the evidence is that it was because of the checkpoint. But I'm not sure that that's a significant issue. Yeah, right. Not to your issue. It's not. It's just interesting. So unless there's any other questions, I'll submit it. No, but the first question I'm going to ask is, let's get to the question of this probable cause. Was it indeed admitted in the complaint? No, Your Honor. It was never admitted that this is with probable cause. This is without probable cause all the time because it's fruit of the poisonous tree. And there cannot be probable cause to know that there was an offense committed if there was no lawful order. You said that your complaint virtually stated that there was probable cause. And, Your Honor, I would submit that that is not the case. That what happened in this case is they made an illegal stop. They had no lawful basis to give an order. Therefore, no order that was given was lawful. And, Your Honor, I have many points to respond to, including the last point that I believe was made by both Judge Mills and Judge Wardlaw, which was, was this accident the result of Mr. Bresci's conduct or the roadblock? And the accident happened seconds after he was stopped. The accident happened because of the way this roadblock was set up. It was set up abysmally. But is that relevant? That's my opinion, based on the facts that are in the record, of how this was set up with a few cones with a quarter-mile notice around the bend at night. Doesn't the independent decision-making by the prosecutor make who you're suing not liable? The prosecutor never, in this case, independently viewed this case. All we have is the word of an officer who wanted to refile the charges and said, can I do this procedurally? And the prosecutor said, procedurally, you can refile charges. It was a procedural ruling. There was no substance to finding no judicial magistrate found probable cause in this case. And there never came the opportunity because it got dismissed for disclosure violations. Regarding, this is essentially a joint task force by the admission of Lieutenant Ford on the scene in 2002. He denies that now, but he said it then. And other evidence of joint task force is what kind of vehicles were at the scene when Mr. Bresci's co-worker shows up a few hours later, sees 20 or so border patrol vehicles, 8 to 10 tribal police vehicles. And there were only a couple of border patrol violations that were discovered at this stop. They were obviously there. There weren't any state enforcement vehicles, were there? No, there weren't, because the tribal police contained state enforcement capabilities, so they didn't need to have other state actors there. They could be the state actors themselves. They can't be federal actors in the same way. As I believe all of the judges noted, that the Schonk Memorandum is still the policy, according to the chief of police's deposition testimony in 2006, that this memorandum, even if Lieutenant Ford says he doesn't remember reading it, it was the policy, and it was still floating around. As far as the qualified immunity claims are concerned with regard to whether this is public safety or a law enforcement stop, they're asking for driver's licenses, and Prowse talks about DICTA when you can't stop an individual, but you could maybe have a roadblock, but it's for checking to see if they're driving safely, if they're licensed drivers, not to check them in the ACIC and NCIC databases for wants and warrants. The district court in this case took a novel and unprecedented approach to Evans v. McKay and found that we could somehow separate every little microsecond of activity from what could be done as tribal and what couldn't. And this is unprecedented. It doesn't satisfy the facts of this case. My time is up. I'd ask for this court to reverse the district court's decision, finding that there was no jurisdiction, and then vacate all of the summary judgment rulings. Thank you. Thank you. Counsel, would you tell me what paragraph you were referring to in the third amended complaint when you stated that the plaintiff omitted probable cause? Yes, Your Honor. So page 1 of the complaint, it is line 24, and it says, Mr. Bressey declined in reference to producing the license. The issue is to look at this in the complaint. He refused. Thank you. Thank you, counsel. Bressey v. Board is submitted.
judges: Canby, Wardlaw, Mills